IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**SANDRA J. YOUNGBLOOD,**

        Plaintiff,

vs.    **No. CIV 00-1348 LH/LCS**

**KENNETH S. APFEL**, **Commissioner,**
**Social Security Administration,**

        Defendant.

### MAGISTRATE JUDGE'S PROPOSED FINDINGS
### AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand Administrative Decision filed February 13, 2001. (*Doc. 7*).  The Commissioner of Social Security issued a final decision denying the Plaintiff her claim for a period of disability pursuant to Title II of the Social Security Act, 42 U.S.C., §§416(i) and 423. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well-taken and recommends that it be GRANTED.

### PROPOSED FINDINGS

### I. PROCEDURAL RECORD

1.      The record indicates that Ms. Youngblood's case was presented on two different occasions before an Administrative Law Judge (ALJ). On the first occasion, the ALJ awarded her a

close-period of benefits. The Plaintiff appealed this decision based in part on a motor vehicle accident which allegedly inflamed her disability. The Appeals Council reviewed her appeal and ordered another hearing pursuant to explicit instructions. The following procedural record outlines those two hearings.

2.  Plaintiff Sandra Youngblood initially filed an application for disability insurance benefits and supplemental security income with the Social Security Administration on March 3, 1994 alleging a disability since March 29, 1993. *See* R. at 62-63. Plaintiff alleged that she suffered from effects of a low back injury, "non-union" fusion[1], depression, and headaches. *See* R. at 80, 96, and 118. The Plaintiff's application was denied at the initial level on September 15, 1994, *see* R. at 46, and at the reconsideration level on February 20, 1995. *See* R. at 52. Ms. Youngblood appealed the denial of her claim by filing a Request for Hearing by an Administrative Law Judge on April 6, 1995. *See* R. at 55.

3.  Administrative Law Judge William Nail held a hearing, the first of her two hearings, on November 22, 1995 and issued his decision on July 22, 1996. *See* R. at 42. In that decision, the ALJ found that Ms. Youngblood was entitled to a period of disability commencing on March 29, 1993. *See* R. at 45. The ALJ then found that the Claimant's disability had ceased on April 17, 1995 and concluded that Ms. Youngblood's entitlement to insurance benefits was to end in June of 1995. *Id*. Ms. Youngblood subsequently filed a request for review of hearing decision on August 2, 1996 to the Appeals Council and on December 4, 1997, the Appeals Council remanded the case in order for the ALJ to evaluate the issue of disability cessation within the requirements of 20 CFR §

---

[1] "Non-union" is defined as a "[f]ailure of normal healing of a fractured bone." STEDMAN'S MEDICAL DICTIONARY 1219 (26th ed. 1995). ALJ Nail commented that a diagnosis of "non-union" strongly suggests that the claimant continues to equal Section 1.05C.

404.1594.[2] Specifically, the Appeals Council stated

> [t]he Administrative Law Judge found that medical improvement related to the claimant's ability to work was supported by the treating physician's release to sedentary work on April 17, 1995. However, the claimant was involved in a motor vehicle accident in October, 1995, and in November of 1995 the treating physician stated that the claimant's accident has complicated her condition. The Appeals Council concludes that the record has not been adequately developed as to the severity of the claimant's back impairment after her October 1995 accident.
>
> Upon remand, the Administrative Law Judge will, for the pertinent period:
> - Obtain records from treating and/or examining sources since the previous hearing.
> - Further evaluate the issue of disability cessation in accordance with the requirements of 20 CFR 404.1594. *Id.*

4. Upon remand, an Administrative Law Judge held the claimant's second hearing on September 15, 1998 and a decision was entered on February 25, 1999. *See* R. at 13. The ALJ followed the legal framework specified in 20 CFR §404.1594(f)(1)-(8) for evaluating whether a claimant's disability continues and listed the steps in her opinion as follows: (1) Is the claimant engaged in substantial gainful activity? (2) Does her impairment meet or equal any listed impairment? (3) Has there been a medical improvement? (4) What is the claimant's current residual functional capacity? (5) Is the medical improvement related to claimant's ability to work? (6) Is the claimant's impairment severe? (7) Can claimant perform her past relevant work? and (8) Is there other work she can perform? The ALJ then made the following conclusions: the claimant had not engaged in substantial gainful activity; the claimant did not meet or equal any listed impairment; under the B-Criteria analysis, claimant's depression disorder is a non-severe mental impairment; the record considered as a whole shows signs of medical improvement; claimant has the RFC to perform the full

---

[2] 20 CFR §404.1594 is titled "How we will determine whether your disability continues or ends."

range of sedentary work; claimant's medical improvement is related to her ability to work; claimant has a severe impairment by regulatory definition; claimant does not have the RFC to return to her past relevant work; and there are numerous sedentary jobs in the economy the claimant is able to perform. *See* R. at 25.

5. As a result of this analysis, the ALJ found that Ms. Youngblood was not disabled, that she could perform other work after April 17, 1995, and that her medical improvement related to her ability to engage in substantial gainful activity. *See* R. at 27. Thereafter, the Plaintiff filed a request for review on March 3, 1999 to the Appeals Council. *See* R. at 9. On April 4, 2000, the Appeals Council issued its decision denying request for review and upholding the final decision of the ALJ. *See* R. at 7. The Plaintiff subsequently filed her complaint for court review of the ALJ's decision on June 1, 2000. (*Doc. 1*). The sole issue before this Court is whether the ALJ's finding, that Ms. Youngblood's disability ceased as of April 17, 1995, is supported by substantial evidence.[3]

---

[3] To have a clearer understanding of the procedural background, the following is a diagramed summary of the most pertinent events:

| EVENT | OUTCOME (if applicable) |
|---|---|
| Plaintiff filed her initial application for disability benefits on March 3, 1994 | N/A |
| First ALJ decision issued on June 22, 1996 | ALJ found a closed-period of benefits dating from March 29, 1993 to April 17, 1995. |
| Plaintiff sustained injuries in motor vehicle accident in October 1995 | N/A |
| Plaintiff's request for review of hearing decision submitted on August 2, 1996 | N/A |
| Appeals Council issued Order remanding case on December 4, 1997 | Council remanded case in order for ALJ to reevaluate claimant's condition in light of her October 1995 accident. |
| Second ALJ decision issued on February 25, 1999 | ALJ found that claimant has shown medical improvement and that her disability ended as of April 17, 1995. |

## II. STANDARD OF REVIEW

6. The standard of review in this Social Security appeal is whether the ALJ's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Secretary of Health and Human Services*, 961 F. 2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if a reasonable mind might accept [it] as adequate to support a conclusion. *Andrade v. Secretary of Health and Human Svcs.*, 985 F. 2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F. 2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gossett v. Bowen*, 862 F. 2d 802, 805 (10th Cir. 1988).

7. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F. 2d 1482, 1486 (10th Cir. 1993) (citing 42 U. S. C. § 423(d)(1)(A)). The Plaintiff in this case qualified for closed-period of disability insurance benefits in 1996. The question in this case is whether her benefits were properly terminated.

8. In a benefit termination case, the ultimate burden of proof lies with the Commissioner. *See Glenn v. Shalala*, 21 F. 3d 983, 987 (10th Cir. 1994). The regulations of the Social Security Administration require the Commissioner to apply the following specific evaluation steps to determine whether the disability will continue: (1) Is the claimant engaged in substantial gainful activity? (2) Does the claimant have an impairment or combination of impairments which meets or equals the severity of an impairment listed in Appendix 1 of 20 C. F. R. § 404, Subpart P,

5

20 C.F.R. §§ 404.1501-.1599? (3) Has there been a medical improvement related to the ability to do work? (4) If there has been medical improvement related to the ability to do work, does the claimant have a severe impairment or combination of impairments? (5) Is the claimant able to perform her past relevant work? (6) If not, does the claimant have the residual functional capacity to perform any other work? *See* 20 C. F. R. § 404.1594(f).

### III. ADMINISTRATIVE RECORD

9. In April of 1995, Ms. Youngblood was seen by Dr. Michael E. McCutcheon[4] regarding her complaints of pain in her groin and leg. *See* R. at 257.[5] After a physical examination, Dr. McCutcheon stated that Ms. Youngblood "has full movement of the hip without halting or guarding, but internal and external rotation or abduction do increase her pain. . . [t]he patient's history and clinical findings are consistent and do give evidence to support her complaints. The prognosis for continuous spontaneous recovery in this patient is only fair." *Id.* Dr. McCutcheon also stated that further physical therapy would not help and that "she may return to work only in a sedentary role." *Id*. In June of 1995, Ms. Youngblood had a similar visit with Dr. McCutcheon, however, Dr. McCutcheon included in his evaluation that the Plaintiff's complaint of depression was related to her multiple surgeries. *See* R. at 256. Later that month, the Plaintiff was treated for back pain, and "shooting" left leg and hip pain at Nor Lea General Hospital. *See* R. at 241. She was discharged with pain medication. *Id.*

10. Approximately one month later, Ms. Youngblood was treated by Edward S.

---

[4] Dr. McCutcheon is a surgeon who performed Ms. Youngblood's back surgery. *See* R. at 261.

[5] The record contains medical reports dating back to 1993. However, since the Commission has already conceded that Ms. Youngblood was disabled from March of 1993 to April of 1995 and that Ms. Youngblood is entitled to benefits for that period, I am documenting in this opinion only the relevant medical records dated after April of 1995.

6

Naimark, Ph. D., a psychologist. *See* R. at 246-54. Plaintiff's complaints consisted of leg pain, impaired memory, inability to participate in physical activities, headaches, marital problems, and significant depression. *See* R. at 248 and 253. Dr. McCutcheon had referred her to Dr. Naimark in order to improve her pain/stress coping skills. *See* R. at 250. Dr. Naimark diagnosed Ms. Youngblood with "Pain Disorder associated with both psychological factors and a medical condition." *See* R. at 247. He also stated that testing revealed extraordinary high levels of pain-focusing, significant levels of depressive ideation at times, poor reality testing at times and introversion and low self-esteem. *Id*. Dr. Naimark strongly recommended psychological follow-up for instruction in pain management techniques and that it was crucial for the patient to engage in activities outside the home, either paid or volunteer. *Id*.

11. On October 23, 1995, Ms. Youngblood was in a motor vehicle accident in which she was rear-ended by another motorist going approximately 40-45 miles an hour. *See* R. at 255. Ms. Youngblood complained of being sore all over and was told that there was x-ray evidence that her fusion had moved. *See* R. at 255. Dr. McCutcheon prescribed pain medication and scheduled surgery for November 22, 1995. *Id*. However, because the workers' compensation insurer did not approve of the surgery, it was canceled. *Id*.

12. Ms. Youngblood eventually underwent surgery in August of 1996 for a bilateral non-union resection to L4-5. *See* R. at 260 and 263. There were no complications and Ms. Youngblood was discharged with medications and a brace. *See* R. at 260.

13. In December of 1998, Ms. Youngblood was evaluated by Robert Pennington, M.D., Ph.D. *See* R. at 288-93. She told Dr. Pennington that she had gotten progressively better after the surgeries, but continued to have severe back pain with activity. *See* R. at 288. Dr. Pennington's

assessment of Ms. Youngblood's condition was that she has "chronic back pain syndrome with post laminectomy and cervical strain secondary to whiplash." *Id.*

14.     At Ms. Youngblood's second hearing, she testified that she suffers from headaches and constant pain in her neck, low back and left hip. *See* r. at 307-08. Her pain is worst after prolonged sitting and standing. *See* R. at 308. She could stand in one place for ten minutes, and up to forty-five minutes if she could change positions. *See* R. at 313. She had been able to walk approximately one mile in twenty minutes but now experiences hip pain. *See* R. at 313-314. Her neck and hip pain commenced after the car accident in 1995. *See* R. at 309-11. She testified that she is unable to afford prescription medication for a year or so and therefore took over the counter medication for pain relief. *See* R. at 311.

15.     Ms. Youngblood testified that she drives to do occasional light errands but that her daughter helps her with grocery shopping. *See* R. at 314-15. In an average day, Ms. Youngblood stated that she may dust, clean dishes, walk around the house, and watch television. *See* R. at 315-16.

## IV. DISCUSSION

16.     In support of her Motion to Reverse or Remand, the Plaintiff made the following arguments: she contends that the ALJ erred in finding that the Plaintiff's condition had medically improved, that the ALJ's finding that the Plaintiff could perform sedentary work after April 17, 1995 was not supported by substantial evidence, and the ALJ's credibility finding is contrary to the evidence and law.

### Medical Improvement

17.     Medical improvement is defined as any decrease in the medical severity of the impairments present at the time of the most recent favorable medical decision of disability. *See* 20 C.

F. R. § 404.1594(b)(1). This determination is based upon changes in the symptoms or signs of laboratory findings associated with the impairment. *See id.* In order to determine whether medical improvement has occurred, the Commissioner must compare the current severity of the impairment with the most recent decision finding disability. *See* 20 C. F. R. § 404.1579(b)(5). Moreover, the medical improvement must be related to the ability to perform work. *See Glenn v. Shalala*, 21 F. 3d at 987.

18.     The determination of whether the improvement is related to the claimant's ability to work is dependant on whether the ALJ's <u>initial</u> disability assessment (the Commission's most recent <u>favorable</u> decision finding disability) was evaluated at step three or step five. If the ALJ's most recent favorable decision was based on the fact that the claimant's impairment at the time met or equaled the severity contemplated by the Listing of Impairments, assessment of the claimant's residual functional capacity would not have been made. *See* 20 C. F. R. § 404.1594(c)(3)(i). "If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, [I] will find that the medical improvement was related to your ability to work." *Id.*[6]

19.     In applying this medical improvement test, the ALJ would ordinarily compare the medical severity of the current impairment to the severity of the impairment that was present at the time of the most recent favorable medical decision finding the claimant disabled. *See Shepherd v. Apfel*, 184 F. 2d 1196, 1201 (10th Cir. 1999) (citing 20 C. F. R § 404.1594( b)(7)). Accordingly, the ALJ would then assess whether the claimant's <u>current</u> condition meets or equals the severity

---

[6]     The Court focuses on the Listings since the ALJ awarded disability benefits based on the fact that the claimant's disability met the requirements of Listing 1.05C. *See* R. at 43.

9

contemplated by the Listing referred to in the Commission's most recent favorable decision. However, in this case, the Appeals Council specifically referenced the claimant's back impairment after her October 1995 accident. *See* R. at 59. The Council then directed the ALJ to obtain records since the original hearing and evaluate the issue of disability cessation. *Id*. Thus, instead of referring to the claimant's <u>current</u> condition as a point of comparison, the ALJ was directed to analyze the claimant's condition surrounding her October 1995 accident in order to come into compliance with the Appeals Council's order.

20.     In order to expedient the appropriate analysis, the following is a summary of the Commission's most recent favorable decision in 1996, the decision awarding Ms. Youngblood a closed-period of disability benefits. In that decision, ALJ Nail found that Ms. Youngblood's physical impairment met the severity requirements of Listing 1.05C (disorders of the spine) 20 C. F. R. Part 404, Subpt. P, App 1. *See* R. at 43. The ALJ based this conclusion on evidence of Ms. Youngblood's recurrent surgeries with a need for intervening and subsequent physical therapy following each surgery and evidence diagnosing her with "non-union." *See* R. at 42-43. ALJ Nail subsequently concluded that Ms. Youngblood did not meet the requirements of Listing 1.05C after April 17, 1995 due to a recommended finding of her treating physician, Dr. McCutcheon. *Id*. Dr. McCutcheon's evaluation on April 17, 1995 released Ms. Youngblood to perform sedentary work, which would seem inconsistent with the per se medical inability to work as described in the Listings. *Id*.

21.     Upon remand in 1999, the ALJ found Ms. Youngblood's physical impairment <u>did not meet</u> the severity requirements of Listing 1.05C as of April 17, 1995 and beyond. *See* R. at 17-18. The ALJ stated that "[t]he medical evidence does not show claimant meets the two criteria described by listing 1.05C. Claimant's chronic back pain syndrome with status post laminectomy and fusion and

cervical strain do not meet or equal any listed impairment after April 17, 1995." *See* R. at 18. The ALJ further stated that the severity of Ms. Youngblood's impairments had decreased based on "improvement in the symptoms, signs and laboratory findings. Claimant's laminectomy, fusion or cervical whiplash have healed and her condition effectively treated." *Id*. There is no reference to any medical findings in the record pertaining to her physical impairment post 1995. The only reference to the claimant's automobile accident in 1995 within the ALJ's opinion is a reference to Dr. Pennington's evaluation in 1998, an evaluation which took place three years after the accident. The ALJ stated "[c]laimant also sustained cervical whiplash in the October 1995 automobile accident. Dr. Pennington reports no objective findings either status post laminectomy and fusion or cervical whiplash." *See* R. at 20.

22.     The Appeals Council explicitly stated, in its Order remanding this case for resolution of the issue of disability cessation, that the "ALJ will obtain records from treating and/or examining sources since the previous hearing." *See* R. at 59. The Council further elaborated by stating that "the record has not been adequately developed as to the severity of the claimant's back impairment after her October 1995 accident." *Id*. The ALJ was then directed to "evaluate the issues of disability cessation in accordance with the requirements of 20 CFR 404.1594." *Id*. Although the regulations state the ALJ must look to the severity of the claimant's <u>current</u> impairment when determining disability cessation, 20 C. F. R. § 404.1579(b)(5)[7], I find that the Appeals Council's specifically ordered the ALJ to look to the severity of Ms. Youngblood's disability <u>at the time of the accident and beyond</u>. Instead, the ALJ placed great importance on a medical evaluation that took place three years after the date of the accident. After reading the 1999 decision, I find the ALJ did

---

[7]     *See supra* ¶ 16.

11

not adhere to the Council's order. The ALJ made no reference to the claimant's impairment surrounding the 1995 accident when concluding the claimant did not meet or equal any of the listings. The ALJ merely came to the conclusion that the claimant did not <u>currently</u> meet or equal the listings. *See* R. at 18-20.[8] The ALJ's analysis represents a comparison between the claimant's current condition and her condition of June 1995. Even if the ALJ made the correct comparison, there is a paucity of evidence in the record relating to her disability and how the accident affected it in the years 1995 and 1996.[9]

23.     Specifically, the medical records indicate that Ms. Youngblood was in a car accident in October of 1995. *See* R. at 255. However, there are no medical records pertaining to how the accident affected Ms. Youngblood's condition.[10] Although the ALJ was aware at the hearing of the 1995 accident, there is nothing in the record to decipher if the accident exacerbated the claimant's condition. *Cf. Carter*, 73 F.3d at 1022 (ALJ has duty to develop record for impairments which come to his attention during hearing). The only evidence in the record relating to Ms. Youngblood's condition after the accident is a consultation dated November 1998, three years after the accident. In that consultation, Dr. Pennington stated that "[Ms. Youngblood] had a prior neck and shoulder

---

[8]     The essence of the Council's order seems to indicate that the ALJ should have evaluated whether Ms. Youngblood would have been eligible for either an extension on her closed-period disability payments or another closed-period disability assessment altogether.

[9]     Although a claimant has the burden of providing medical evidence proving disability, 20 C.F.R. §§ 404.1512(a)-(c), the ALJ has a basic duty of inquiry to fully and fairly develop the record as to material issues. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.944; *see Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir.1996); *see also Jordan v. Heckler*, 835 F.2d 1314, 1315 (10th Cir.1987). This duty exists even when the claimant is represented by counsel. *See Baker v. Bowen*, 886 F.2d 289, 292 n. 1 (10th Cir.1989). In a benefit termination case, the ultimate burden of proof lies with the Commissioner. *See Glenn*, 21 F. 3d at 987.

[10]    The only medical records interpreting the claimant's condition after the accident is a pre and post operative diagnosis for her bilateral non-union resection dated August of 1996, a discharge diagnosis dated October 9, 1996, medical imaging reports dated January of 1997, and a physical medical consultation dated November of 1998. *See* R. at 260, 261-63, 281, and 288.

injury secondary to a motor vehicle accident in 1995 which has caused her marked discomfort." *See* R. at 288. The doctor's impression was that she maintained "chronic back pain syndrome with post laminectomy and cervical strain secondary to whiplash." *See* R. at 289. Even if Dr. Pennington's remarks are an exact diagnosis of Ms. Youngblood's condition and she is determined to be currently non-disabled, this assessment does not comport with the Appeals Council's order nor would it be determinative of a closed period of disability.

24.     I find that the Appeals Council directive was clear. Upon remand, the ALJ should have developed the record pertaining to the severity of the claimant's back impairment after the date of the October accident both immediately and thereafter. Not only was the ALJ directed by the Council, the ultimate burden was on the Commissioner to develop the record. *See Glenn*, 21 F. 3d at 987; *see, also Donato v. Secretary of Dep't of Health & Human Servs.*, 721 F.2d 414, 419 (2d Cir.1983) (Secretary had duty to take further post-hearing action to obtain treating physician's records); *Smith v. Bowen*, 687 F.Supp. 902, 906 (S.D.N.Y.1988) (directing ALJ on remand to obtain complete medical records on plaintiff and further assessments by treating and consulting physicians). If the record was in fact fully developed, the ALJ should have evaluated the severity of the claimant's back impairment at the time of the accident with the severity of the claimant's impairment at the time of ALJ Nail's determination in 1996.  Therefore, I recommend finding that the appropriate course of action is to remand this case based on the following reasons: (1) The Appeals Council remanded this case once before with explicit and clear instructions; (2) The ALJ's analysis was contrary to the Council's Order because the sole piece of evidence the ALJ relied on was dated three years after the claimant's accident; and (3) it has been five years since the date of the most favorable decision from the Commission.

**RECOMMENDED DISPOSITION**

I recommend granting the Plaintiff's Motion to Reverse or Remand for Administrative Agency Decision filed February 13, 2001 (*Doc. 7*). This case should be remanded to the Commissioner so that the ALJ can develop the record pertaining to the severity of the claimant's back impairment <u>immediately after the date</u> of the October accident and complete the appropriate analysis as directed by the Appeals Council's Order. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**